# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

DAN WILKINSON, )
)
    Plaintiff, )
)
v. ) Case No. 09-2430
)
MANN BRACKEN LLC, )
)
    Defendant. )
)

## MEMORANDUM AND ORDER

Plaintiff Dan Wilkinson filed a Complaint (doc. 1) against Mann Bracken LLC alleging violations of the Fair Debt Collection Practices Act, 151 U.S.C. § 1692 (FDCPA). Mann Bracken made a Rule 68 Offer of Judgment, agreeing to pay Mr. Wilkinson $1,001 plus costs and fees, in addition to a judgment entered in favor of Mr. Wilkinson. Mr. Wilkinson accepted this offer (doc. 4), and judgment was entered in his favor (doc. 7).

The matter is presently before the court on Mr. Wilkinson's Motion for Attorneys' Fees and Costs (doc. 8), in which he seeks fees and costs in the amount of $3462.20. For the reasons set forth below, Mr. Wilkinson's motion is granted in part and denied in part. Specifically, the court awards Mr. Wilkinson $1405.00.

**I.    Compliance with Rule 54**

Mann Bracken first challenges Mr. Wilkinson's motion for his failure to comply

with Rule 54, which requires fee motions to be filed within 14 days of judgment, Fed. R. Civ. P. 54(d)(2)(B)(I), and local Rule 54.2, which requires the moving party to

> advise[] the court in writing that after consultation promptly initiated by the moving party, the parties have been unable to reach an agreement with regard to the fee award. The statement of consultation shall set forth the date of the consultation, the names of those who participated, and the specific results achieved.

D. Kan. Rule 54.2.

Mann Bracken is correct that Mr. Wilkinson's motion was filed more than 14 days after the entry of judgment and that it did not set out the particulars regarding a consultation between the parties. But the language of the Offer of Judgment itself contemplated a negotiation between the parties: "The parties will endeavor to agree on the amount of attorney fees; however, if the parties cannot agree, the amount of attorney fees to be awarded will be submitted to the Court for determination." And Mr. Wilkinson's motion did indicate that "the parties were unable to come to resolution on said issue and therefore this petition follows in accordance with the agreement between the parties." Moreover, in his reply (doc. 10), Mr. Wilkinson provided the specific details of the parties' failed negotiations, including an affidavit from attorney Michael S. Agruss describing the e-mails, offers, and counter-offers the parties exchanged.

Thus, absent any suggestion from Mann Bracken that the required consultations did not occur, the court finds that Mr. Wilkinson has now substantially complied with local Rule 54.2. *See, e.g.*, *Maberry v. Said*, No. 94-2416, 1996 WL 442046, at *4 (D. Kan. July 3, 1996) (finding substantial compliance with the rule when considering

2

plaintiff's reply pleadings, despite the lack of strict compliance in the original motion).

## II.     Participation of Local Counsel

Mann Bracken also encourages the court to deny all fees incurred by attorneys not admitted to practice before this court and who did not seek permission to appear *pro hac vice* on this matter. According to the time sheets Mr. Wilkinson submitted, the attorney of record Patrick Cuezze devoted only 12 minutes to this case. The remaining 12.2 hours of work were completed by paralegals or lawyers not admitted to practice before this court. Mann Bracken contends that Mr. Cuezze thus "had no active participation in this case," and instead "merely lent his name to out-of-state lawyers who would otherwise be unable to file suit in this Court." Mann Bracken suggests that Mr. Cuezze therefore violated the Rule 11 requirement that an attorney conduct "inquiry reasonable under the circumstances," Fed. R. Civ. P. 11(b), as well as the spirit of this district's rule that local counsel "shall participate meaningfully in the preparation . . . of the case," D. Kan. Rule 83.5.4(c). Based on this interpretation of the situation, Mann Bracken argues that the court should deny all attorneys' fees.

Mann Bracken has marshaled no authority for this proposition, nothing in this court's rules or in the Tenth Circuit case law requiring that local counsel of record contribute a specified percentage of hours to the time billed for the case. It is not unreasonable to imagine that Mr. Cuezze contracted this work to lawyers who regularly filed FDCPA cases and that his review of the pleadings did not take very much time. If Mann Bracken believes Mr. Cuezze has violated the requirements of Rule 11, it may file

a motion to that effect. But this court has no reason to reduce or deny the fee request in this case based merely on a claim that the billing entries might suggest improper or insufficient oversight by local counsel.

**III. Attorneys' Fees**

Once a party has established its entitlement to fees, the court must determine what fee is "reasonable." *Ellis v. University of Kansas Med. Ctr.*, 163 F.3d 1186, 1202 (10th Cir. 1998). As courts have long recognized, the most useful starting point for determining the amount of a reasonable fee is the "lodestar" figure—"the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.*; *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1249 (10th Cir. 1998) (quoting *Jane L. v. Bangerter*, 61 F.3d 1505, 1509 (10th Cir. 1995)). Once the court determines the lodestar, it must then determine whether any upward or downward adjustment should be made to the lodestar "to account for the particularities of the suit and its outcome." *See Phelps v. Hamilton*, 120 F.3d 1126, 1131 (10th Cir. 1997).

*A. Hours Reasonably Expended*

In calculating the number of hours reasonably spent by counsel for the party seeking fees, the court must ensure that counsel has exercised proper "billing judgment." *Case*, 157 F.3d at 1250 (citing *Ramos v. Lamm*, 713 F.2d 546, 553 (10th Cir. 1983)). As the Tenth Circuit reiterated, billing judgment "consists of winnowing the hours actually expended down to the hours reasonably expended." *See id.* (citing *Ramos*, 713 F.2d at 553). An analysis of whether counsel has exercised proper "billing judgment" requires

4

a two-step inquiry. First, the court examines whether specific tasks are properly chargeable at all. *See id.* ("Hours that an attorney would not properly bill to his or her client cannot reasonably be billed to the adverse party, making certain time presumptively unreasonable.") (citing *Ramos*, 713 F.2d at 553-54) (giving as an example time spent doing background research)). Second, after examining the specific tasks and whether they are properly chargeable, the court examines the hours expended on each task to determine if they are reasonable. *Id.* However, the court "need not identify and justify every hour allowed or disallowed, as doing so would run counter to the Supreme Court's warning that a 'request for attorney's fees should not result in a second major litigation.'" *Ellis*, 163 F.3d at 1202 (quotations and citations omitted); *accord Case*, 157 F.3d at 1250. At all times, counsel for the party seeking fees has the burden to prove that their hours were reasonable. *See, e.g., Case*, 157 F.3d at 1259.

In evaluating tasks properly chargeable, the court notes that billing logs for Mr. Wilkinson's attorneys identify 12.4 hours of work by various attorneys and paralegals. All tasks appear fairly straightforward—consultation with client, drafting and reviewing documents, filing documents with the court—and Mann Bracken does not challenge any specific task as being inappropriate for a fee award.

Mann Bracken argues, however, that the 2.5 hours spent drafting the complaint were not reasonable given that the complaint is a boilerplate form, identical to seven others filed on behalf of Mr. Wilkinson. Reviewing the billing sheets, however, the court is satisfied that the time spent on the complaint was reasonable. Even if Mr.

Wilkinson's attorneys used a template as the starting point for the complaint, various modifications and case-specific information would still need to be added. In fact, the time entries for Ms. Requierme, who spent 2.3 hours on the complaint, include a detailed breakdown of the various tasks she performed, including reviewing client information, researching the FDCPA to get specific section numbers, drafting the case-specific information about venue and jurisdiction, preparing the verification form, revising the complaint, adding new client information, and reviewing and editing the document. The court is comfortable awarding fees for these tasks in preparing the complaint.

Mann Bracken also contends that any fees incurred after the acceptance of judgment are not recoverable. Given the language of the Offer of Judgment, which allows for attorneys' fees "incurred as of the date of the acceptance of the offer," this court agrees.[1] The plain language of the agreement signed by Mr. Wilkinson and his attorneys contemplates an award of fees only as of the date of the acceptance, which was September 29, 2009. Thus, the court will subtract from the total amount of fees requested 3.5 hours incurred by attorney Mr. Agruss and 0.2 hours incurred by attorney Adam Krohn.

---

[1] The Tenth Circuit has even specified that an offer of judgment that is accepted triggers the express cut off provision of Rule 68 itself such that an accepted offer of judgment which provides for "costs of suit *to date* and attorneys' fees *to date*" is sufficient to cut off fees and costs as of the date when the offer of judgment was made, even if the judgment entered by the court does not apply the Rule 68 cut off. *Sussman v. Patterson*, 108 F.3d 1206, 1209-11 (10th Cir. 1997). Here, the language of the Offer of Judgment is even more specific, allowing costs and fees "incurred as of the date of the acceptance of the offer."

### B. *Reasonable Hourly Rate*

To complete the lodestar calculation, the court now determines a reasonable hourly rate. *Ellis*, 163 F.3d at 1203. A reasonable rate "is the prevailing market rate in the relevant community." *Id*. (quoting *Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996) (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984))). The relevant market rate is the "price that is customarily paid in the community for services like those involved in the case at hand." *Id.* (quoting *Beard v. Teska*, 31 F.3d 942, 956 (10th Cir. 1994)). Thus, plaintiff bears the burden of showing that the "requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *See id.* (quoting *Malloy*, 73 F.3d at 1018) (quoting *Blum*, 465 U.S. at 895 n.11)).

In his motion for fees, Mr. Wilkinson requests an hourly rate of $394 for attorney Mr. Krohn; $290 for attorneys Mr. Cuezze and Mr. Agruss; $162.50 for Ana Requierme, a law school graduate; and $125 for paralegals who worked on the case. Mann Bracken challenges these rates as unreasonable.

In support of this request, Mr. Wilkinson notes that Mr. Krohn, the managing and founding partner of Krohn & Moss, Ltd., is an Illinois attorney with 15 years experience. Mr. Krohn has first chaired at least nine trials and has personally settled over five hundred cases for Illinois consumers alone. He is responsible for all aspects of the law firm and is a nationally recognized consumer advocate.

Mr. Cuezze is of-counsel to Krohn & Moss's Missouri warranty and lemon law

7

practice. He received his law degree in 1999 and began private practice in 2002.

Mr. Agruss received his law degree in 2004, and spent several years litigating personal injury cases in Chicago, Illinois. He joined Krohn & Moss in September 2008 and concentrates his practice in the FDCPA.

Additionally, Mr. Wilkinson submitted a Consumer Law Attorney Fee Survey from 2007, conducted by Ronald L. Burdge. This survey indicates that the average billing rate for law firms with more than five attorneys in the Midwest is $274 per hour, commensurate with the rates billed by Mr. Cuezze and Mr. Agruss. Additionally, the survey reports the average hourly rate for attorneys in the Midwest with 11-15 years experience is $394, the rate charged by Mr. Krohn.

This survey, however, aggregates data for the Midwest, which includes attorney rates in Iowa, Illinois, Indiana, Kansas, Michigan, Minnesota, Missouri, North Dakota, Nebraska, South Dakota, and Wisconsin. Reasonable rates, however, are to be determined by the "relevant community," *Ellis*, 163 F.3d at 1203, which is normally the location where the trial is conducted. *Brown v. Unified Sch. Dist. No. 501, Shawnee County, Kan.*, 878 F. Supp. 1430, 1433 (D. Kan. 1995). Here, therefore, the relevant community is the Kansas City metropolitan area. *See, e.g.*, *Bell v. Turner Recreation Com'n*, No. 09-2097, 2010 WL 126189, at *7 n.3 (D. Kan. Jan. 8, 2010); *Lintz v. American General Finance, Inc.*, 87 F. Supp. 2d 1161, 1170 n.4 (D. Kan. 2000). Thus, the court finds that the Consumer Law Attorney Fee Survey is too broad to be helpful in determining reasonable rates in the Kansas City area.

Mr. Wilkinson also attached the 2007 National Law Journal Billing Survey, which includes data from four Kansas City law firms.[2] Among those firms, the rates charged by partners ranged from $225 to $600, and rates charged by associates ranged from $140 to $300. But this survey report provides no specific information as to the experience and practice of the attorneys billing at the rates listed. As such, it does not provide this court with much guidance in assessing a reasonable fee for the attorneys practicing in this case.

Finally, Mr. Wilkinson incorporates the Laffey Matrix to support the requested hourly rates for his attorneys. The Laffey Matrix establishes rates for attorneys and paralegals under fee-shifting statutes, such as 42 U.S.C. § 2000e-5(k), based on the number of years since graduation from law school. *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C.1983). The United States Attorney's office created the matrix to reflect changes in rates due to inflation. According to the portion of the matrix reprinted in Mr. Wilkinson's motion, attorneys with 11-19 years of experience billed at an hourly rate of $390 in 2007-2008, and attorneys with four to seven years billed at $255 per hour. Thus, Mr. Wilkinson suggests that the rates his counsel seeks are reasonable.

The Laffey Matrix is frequently used to determine presumptively reasonable fees

---

[2] The report includes data for Lathrop & Gage; Polsinelli Shalton Welte Suelthaus; Shughart Thomson & Kilroy; and Stinson Morrison Hecker. The survey also lists Shook, Hardy & Bacon, but gives no data for that firm.

9

in Washington, D.C. *Flitton v. Primary Residential Mortg., Inc.*, No. 2:03CV481DAK, 2009 WL 1357206, at *2 (D. Utah May 7, 2009). Although the matrix can be adjusted for different regions, courts in other districts have found that the Laffey Matrix, even with such adjustments, is not "more helpful than the rates actually used by other courts or the rates of law firms." *Id.*; *see also, e.g.*, *Fitzgerald v. City of Los Angeles*, No.CV 03-01876 DDP, 2009 WL 960825, at *11 (C. D. Cal. Apr. 7, 2009). This court is inclined to agree.

Mann Bracken asserts that the rates charged by Mr. Wilkinson's attorneys are not reasonable. Mann Bracken instead posits that the fees should be no greater than $200 per hour for Mr. Krohn and $175 per hour for Mr. Agruss. In support of this contention, Mann Bracken relies on the 2005 survey by the Kansas Bar Association, which provides both a mean and median billing rate broken down by firm size, years in practice, office location, practice classification, and field of law. The data was obtained from approximately 635 usable returned questionnaires, 39.4 percent of which were from attorneys who office in either Kansas City, Missouri or the Greater Kansas City, Shawnee Mission, Kansas area.

This court finds the KBA survey to be a helpful guide as to market rates in the Kansas City area. Indeed, other courts have relied on the KBA survey as probative evidence of market rates in Kansas. *See University of Kansas v. Sinks*, No. 06-2341, 2009 WL 3191707, at *11 (D. Kan. Sept. 28, 2009); *Augustine v. Adams*, No. 98-2422-GTV, 2000 WL 1375288, at *2 (D. Kan. Sept. 15, 2000); *Wilder-Davis v. Bd.*

*of Comm'rs of Johnson County, Kan.*, No. 98-2363-GTV, 2000 WL 1466691, at *5 (D. Kan. Aug. 8, 2000); *Case v. Unified School Dist. No. 233*, 157 F.3d 1243, 1256 n.1 (10th Cir. 1998).

According to the KBA survey, the average attorney billing rate in Kansas based on years of practice was as follows:

|  |  |
|---|---|
| 1-2 years in practice | $140 |
| 3-5 years in practice | $153 |
| 6-10 years in practice | $166 |
| 11-15 years in practice | $155 |

Additionally, the average billing rate based on office location was $194 for Kansas City, Missouri and $186 for the Greater Kansas City, Shawnee Mission area.

Mann Bracken also cites several recent decisions from the District of Kansas awarding fees in KDCPA cases. Specifically, the court looks to *Dean v. Gillette*, No. 04-2100, 2005 WL 1631093 (D. Kan. July 11, 2005), a FDCPA case in which this court approved an hourly rate of $190 for the two lead attorneys, one of whom had 16 years experience and the other who had over 20 years experience. This court also approved a rate of $135 for an associate with four years experience. Various legal assistants in that case received hourly rates of $75 and $80, although no party challenged that request.

The *Dean* case, combined with the most recent KBA survey, provides this court with the most useful information in determining a reasonable fee in the Kansas City metropolitan area for attorneys in FDCPA cases. Given the above numbers, the rates requested by Mr. Wilkinson's attorneys are unreasonable. Using *Dean* as a guide, taking

11

into consideration inflation and attorney experience, this court instead will calculate fees based on an hourly rate of $200 for Mr. Krohn and $175 for Mr. Cuezze and Mr. Agruss.

Mann Bracken also challenges the $125 hourly rate for work done by paralegals, suggesting the court award paralegal fees at $41.50 per hour. Mann Bracken did not offer evidence that it billed for its paralegal work at such a low rate, however, and a review of District of Kansas cases over the past several years reveals reasonable fees for paralegal work ranging instead from $55 to $100. *See, e.g.*, *Bell v. Board of County Com'rs of Jefferson County*, No. 03-2148, 2005 WL 361510, at *4 (D. Kan. Feb. 15, 2005) ($65); *Hofer v. Unum Life Ins. Co. of Am.*, 338 F. Supp. 2d 1252, 1257 (D. Kan. 2004) ($75); *Dean v. Anderson*, No. 01-2599, 2004 WL 1078146, at *2 (D. Kan. Oct. 7, 2004) ("$100 per hour, although at the high end, is a reasonable rate for paralegals in the Kansas City area."); *Berroth v. Farm Bureau Mut. Ins. Co., Inc.*, No. 01-2095 (2003 WL 22102135, at *5 (D. Kan. 2003) ($55 and $65). Based on this sampling of cases, the court will reduce the hourly rate for paralegal work to $75.

Mann Bracken also seems to dispute the $162.50 hourly rate assigned to Ms. Requierme, noting only that she is a law school graduate who is not yet a member of any bar. Mann Bracken did not, however, offer an alternate hourly rate, though it seems to suggest that she be paid at the $41.50 paralegal rate. With no biographical information from Mr. Wilkinson about Ms. Requierme, the court will evaluate her work as a law clerk, and will award an hourly rate of $75. *See, e.g.*, *Bell*, 2005 WL 361510, *4 (approving an hourly rate of $55 for law clerks); *Wilhelm v. TLC Lawn Care, Inc.*, No.

12

07-2465, 2009 WL 57133, *5 (D. Kan. Jan. 8, 2009) ("The Court further finds that a reasonable hourly rate for Osman is $125.00, an attorney with limited experience who is classified as a law clerk.").

   C.   *Calculation of the Lodestar*

Factoring in the above analysis about hours expended and reasonable rates, the court calculates the lodestar amount to be $1055. That figure is reached as follows:

   Mr. Krohn:  2.3 hours requested - 0.2 hours post-judgment work = 2.1 hours x
       $200 hourly rate = $420

   Mr. Agruss:  4.7 hours requested - 3.5 hours post-judgment work = 1.2 hours x
       $175 hourly rate = $210

   Mr. Cuezze: 0.2 hours x $175 hourly rate = $35

   Ms. Requierme: 3.6 hours x $75 hourly rate = $270

   Paralegals: 1.6 hours x $75 hourly rate = $120

   Total: $420 + $210 + $35 + $270 + $120 = $1055

   D.   *Reduction of the Lodestar*

Having determined the lodestar amount, the court now considers whether any adjustment to that amount is necessary. *See Hensley*, 461 U.S. at 435. Other than the arguments addressed above, neither party contends that the lodestar amount should be adjusted. The court is satisfied that the calculated amount is a reasonable and appropriate award in this case.

**IV.   Expenses**

Mr. Wilkinson also seeks to recover the United States District Court filing fee of

$350.00. Mann Bracken did not challenge that request, and the court agrees it to be a reasonable expense of the case.

**IT IS THEREFORE ORDERED BY THE COURT** that Mr. Wilkinson's Motion for Attorneys' Fees and Costs (doc. 8) is granted in part and denied in part. Plaintiff is awarded $1055.00 in attorneys' fees and $350.00 in costs, for a total award of $1405.00.

**IT IS SO ORDERED** this 21st day of January, 2010.

                                           s/ John W. Lungstrum
                                           John W. Lungstrum
                                           United States District Judge